J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Ave., Suite 202
Glendale, California 91206
Telephone:   (818) 500-3200
Facsimile:    (818) 500-3201

Attorneys for Plaintiffs DC Comics
and Sanrio, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DC Comics and Sanrio, Inc., | ) | Case No. |
| Plaintiffs, | ) ) ) | COMPLAINT FOR COPYRIGHT INFRINGEMENT; TRADEMARK INFRINGEMENT; UNFAIR COMPETITION |
| v. | ) ) ) | |
| Ufindings, LLC, a California corporation and d/b/a Pet & Gift Shop; Jenny Chan a/k/a Jamie Tran, an individual and d/b/a www.ufindings.com, Ufindings and Pet & Gift Shop; Mei Yuk Cheung a/k/a KC Chang, an individual and d/b/a www.ufindings.com, Ufindings and Pet & Gift Shop, and Does 1 – 10, inclusive, | ) ) ) ) ) ) ) ) ) ) | DEMAND FOR A JURY TRIAL |
| Defendants. | ) ) | |

Plaintiffs DC Comics ("DC") and Sanrio, Inc. ("Sanrio") (collectively "Plaintiffs") for their Complaint allege as follows:

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A.   Introduction**

1.      Plaintiffs filed this action to combat the willful sale of unlicensed and counterfeit products bearing Plaintiffs' exclusive copyrights and trademarks. Defendants Jenny Chan a/k/a Jamie Tran and Mei Yuk Cheung a/k/a KC Chang, are individuals and d/b/a www.ufindings.com, Ufindings and Pet & Gift Shop

("Defendants") are the owners, operators, and managers of a retail business or related enterprise that is actively selling, offering for sale, distributing, and/or manufacturing unlicensed and counterfeit cell phone charms, accessories, jewelry and other merchandise, which incorporate unauthorized likenesses of the illustrated, animated or live action characters or other logos owned by Plaintiffs, including, but not limited to, the Batman "Bat Emblem" and Hello Kitty (collectively "Infringing Product").

2. Plaintiffs seek a permanent injunction, damages, costs, and attorneys' fees as authorized by the Copyright Act, Lanham Act and California law.

**B.   Jurisdiction and Venue**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as Plaintiffs' cause of action arises under The Copyright Act, 17 U.S.C. § 101 and the Federal Trademark Act ("The Lanham Act of 1946"), 15 U.S.C. § 1051 et seq. Further, this Court has jurisdiction over Plaintiffs' California state statutory claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper within the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

**C.   Parties**

      **i.   Plaintiff DC Comics**

5. DC Comics is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York.

6. DC is engaged in the business of publishing comic magazines and is among the most well-known and successful publishers of comic magazines in the world.  It has created and published highly successful and well-known characters including but not limited to BATMAN, ROBIN, and SUPERMAN (hereinafter individually and collectively referred to as the "DC Characters").

7.     A significant aspect of DC Comics' business is the merchandising and licensing of distinctive trademarks and copyrights associated with its highly successful and well-known DC Characters.  Of these, two of the most successful characters have been Batman and Superman.

8.     Batman first appeared in the May 1939 issue of "Detective Comics." Numerous related characters, including "Robin," "The Riddler," "Two Face," "Catwoman," "The Penguin" and "The Joker" as well as other popular characters associated with Batman were soon introduced to the public.  (Batman and the related characters are hereinafter collectively referred to as the "Batman Characters").

9.     Superman appeared at least as early as 1938.  Numerous related characters, including "Clark Kent," "Lois Lane," and "Lex Luthor" as well as other popular characters associated with Superman were soon introduced to the public. (Superman and the related characters are hereinafter collectively referred to as the "Superman Characters").

10.     Since their introductions, the Batman Characters and Superman Characters have been featured in many formats, other than comic books, including movie serials, newspaper comic strips, radio shows, animated television series, live action television series, animated motion pictures, live action motion picture and theatrical presentations, among others.  Television series featuring the Batman Characters and the Superman Characters have since been in continuous television syndication in the United States and abroad for many decades.  These appearances have expanded the popularity of the Batman Characters and the Superman Characters beyond the comic book medium and market.

11.     The Batman Characters have also been featured in the 1989 motion picture entitled *BATMAN* (the "1989 Film"), the 1992 motion picture entitled *BATMAN RETURNS* (the "1992 Film"), the 1995 motion picture entitled *BATMAN FOREVER* (the "1995 Film"), the 1997 motion picture entitled *BATMAN & ROBIN* (the "1997 Film"), the 2005 motion picture entitled *BATMAN BEGINS* (the "2005

Film"), the 2008 motion picture entitled *THE DARK KNIGHT* (the "2008 Film") and the most recent motion picture entitled *THE DARK KNIGHT RISES* ("2012 Film").

12.     The 1989 Film generated over $251 million dollars in domestic box office receipts.  The 1992 Film generated over $162 million dollars in domestic box office receipts.  The 1995 Film generated over $184 million dollars in domestic box office receipts.  The 1997 Film generated over $107 million dollars in domestic box office receipts.  The 2005 Film generated over $205 million dollars in domestic box office receipts.  The 2008 Film generated over $447 million dollars in domestic box office receipts.  And the 2012 Film has generated over $447 million dollars in domestic box office receipts to date.  The *BATMAN* motion pictures have resulted in domestic gross box office receipts in over a billion dollars, not to mention additional revenues from syndication rights and home video distribution.  The *BATMAN* motion pictures have proven to be among the most successful licensing and merchandising ventures of all time, with gross retail sales of associated licensed merchandise exceeding $1,000,000,000.

13.     The Superman Characters have also appeared in numerous theatrical motion pictures since their introduction.  The most recent motion picture featuring the Superman Characters, *MAN OF STEEL*, was released on June 14, 2013, and has generated more than $290 million dollars in domestic box office receipts and more than $359 million dollars in international box office receipts.  The Superman Characters have also been featured in numerous other theatrical motion pictures, including *SUPERMAN RETURNS* which was released in 2006, and generated more than $200 million dollars in domestic box office receipts and more than $190 million dollars in international box office receipts; and  a series of four motion pictures starring Christopher Reeve.  Such motion pictures include *SUPERMAN THE MOVIE, SUPERMAN II, SUPERMAN III and SUPERMAN IV: THE QUEST FOR PEACE*, all of which collectively generated over $750 million dollars in worldwide box office receipts.

14.     Revenues generated from products and services using the DC Characters sold in the United States are substantial.  The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC Comics and its licensees as the source of products bearing the DC Characters.  The design, configuration and distinctive features of the DC Characters and other DC Comics' copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "DC Comics' Copyrighted Designs"), are wholly original with DC Comics and, as fixed in various tangible media, including, without limitation, apparel and a wide variety of merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101, et seq.  DC Comics is the owner of DC Comics' Copyrighted Designs and, as featured on in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.

15.     DC Comics has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the DC Comics' Copyrighted Designs, and DC Comics owns one or more certificates of registration for works in which each of the DC Comics' Copyrighted Designs appear.  A representative list of copyright registrations for the DC Comics' Copyrighted Designs is attached as Exhibit A.

16.     Products featuring the DC Comics' Copyrighted Designs manufactured, sold and distributed by DC Comics or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws.  DC Comics and those acting under its authority have complied with their obligations under the copyright laws and DC Comics has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of the DC Comics' Copyrighted Designs.

17.     DC Comics owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell product bearing the

trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating the DC Characters.

18.     DC Comics is the owner of world famous registered marks which serve to distinguish DC products (hereinafter individually and collectively referred to as the "DC Comics Trademarks").  Each year DC Comics spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality.  A representative list of trademark registrations for the DC Comics Trademarks is attached as Exhibit B, including, but not limited to, the trademark registration of the Superman "S in Shield Logo" and the Batman "Bat Emblem" devices are depicted below:

 

19.     The DC Comics Trademarks are all valid, extant and in full force and effect.  The DC Comics Trademarks are all exclusively owned by DC Comics.  DC Comics has continuously used each of the DC Comics Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

20.     DC has granted and transferred to its related companies, Warner Bros. Consumer Products Inc., and WB Studio Enterprises Inc., subsidiaries of Warner Bros. Entertainment Inc., the right to supervise in the United States the merchandising and licensing of the copyrighted elements, trademarks, trade names and service marks incorporated in or associated with the DC Characters.  Currently, Plaintiffs have numerous active license agreements in the United States.  These

agreements provide for the authorized use of the DC Characters on products and in connection with services, including apparel and related merchandise.

21.     As a result of advertising and sales, together with longstanding consumer acceptance, the DC Comics Trademarks identify DC Comics' products and authorized sales of these products.  The DC Comics Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  DC Comics' Copyrighted Designs and the DC Comics Trademarks are collectively referred to herein as "DC Comics' Properties."

### ii.     **Plaintiff Sanrio**

22.     Sanrio is a corporation, duly organized and existing under the laws of the State of California, having its principal place of business in South San Francisco, California. Sanrio is a wholly owned subsidiary of Sanrio Company, Ltd. Sanrio Company, Ltd. is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan (hereinafter referred to as "Sanrio Company").

23.     For more than fifty years, Sanrio Company has been engaged in the business of manufacturing, distributing and selling a wide range of products including, without limitation, character artwork created, developed and designed by Sanrio Company for use by children and young adults.  Certain of the characters and designs have achieved such global fame and popularity that Sanrio Company has produced and distributed television programming for children based on the character artwork.  One such television program is the animated television series entitled *Hello Kitty*.

24.     A significant source of revenue for Sanrio Company is the merchandising and licensing of distinctive elements bearing character artwork, including, but not limited to, Hello Kitty, Hangyodon, Chococat, Osaru No Monkichi, Bad Badtz-Maru, KeroKeroKeroppi, My Melody and Dear Daniel

(hereinafter individually and collectively referred to as the "Sanrio Company Characters").

25.     The revenue from products using the Sanrio Company Characters sold in the United States is substantial. The appearance and other features of the Sanrio Company Characters are inherently distinctive and serve to identify Sanrio Company as the source of products bearing the Sanrio Company Characters. The design, configuration and distinctive features of the Sanrio Company Characters and other Sanrio Company copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Sanrio Company's Copyrighted Designs") are wholly original with Sanrio Company and, as fixed in various tangible media including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., § 101, *et seq.* Sanrio Company is the owner of Sanrio Company's Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

26.     Sanrio Company has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Sanrio Company's Copyrighted Designs.  A representative list of copyright registrations for Sanrio Company's Copyrighted Designs is attached hereto as Exhibit C.  Sanrio Company's Copyrighted Designs manufactured, sold, and distributed by Sanrio Company or under its authority have been manufactured, sold, and distributed in conformity with the provisions of the copyright laws.  Sanrio Company and those acting under its authority have complied with their obligations under the copyright laws. Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title, and interest in and to the copyrights in each of Sanrio Company's Copyrighted Designs.

27.     Sanrio Company owns all right, title, and interest in and to and holds exclusive rights to develop, manufacture, market, and sell products bearing the

trademarks, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating the Sanrio Company Characters.

28.     Sanrio Company is the owner of world famous registered marks, which serve to distinguish Sanrio Company products (hereinafter individually and collectively referred to as the "Sanrio Company Trademarks").  Some of those trademarks have been used continuously for more than twenty-five years.  Each year Sanrio Company spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality.  A representative list of trademark registrations for the Sanrio Company Trademarks is attached hereto as Exhibit D.

29.     The Sanrio Company Trademarks are all valid, extant, and in full force and effect.  Sanrio Company's Trademarks are exclusively owned by Sanrio Company.  Sanrio Company has continuously used each of the Sanrio Company Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

30.     As a result of advertising and sales, together with longstanding consumer acceptance, the Sanrio Company Trademarks identify Sanrio Company's products and authorized sales of these products.  The Sanrio Company Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  Sanrio, as the exclusive U.S. licensee for Sanrio Company, is authorized to enforce all right, title, and interest in and to the trademarks in each of the Sanrio Company Trademarks.

31.     Through Sanrio, Sanrio Company has authorized and licensed the manufacture and sale of various different types of product, which bear the Sanrio Copyrighted Designs and Trademarks, including, but not limited to apparel and related merchandise.

32.     The DC Characters and Sanrio Company Characters are collectively referred to herein as "Plaintiffs' Characters."  DC Comics' Copyrighted Designs and

the Sanrio Company Copyrighted Designs are collectively referred to herein as "Plaintiffs' Copyrighted Designs."   The DC Comics Trademarks and Sanrio Company Trademarks are collectively referred to herein as "Plaintiffs' Trademarks." Plaintiffs' Copyrighted Designs and Plaintiffs' Trademarks are collectively referred to herein as "Plaintiffs' Properties."

### iii.   **Defendants**

33.   Defendant Ufindings, LLC is a California corporation and doing business as Pet & Gift Shop ("Ufindings").  Plaintiffs are informed and believe Ufindings has its principal place of business located at 404 South Los Angeles Street, Suite 101, Los Angeles, California 90013.  Ufindings is subject to the jurisdiction of this Court and is importing, distributing, advertising and selling merchandise which infringes Plaintiffs' Properties within this judicial district.

34.   Defendant Jenny Chan a/k/a Jamie Tran ("Chan") is an individual and doing business as www.ufindings.com, Ufindings and Pet & Gift Shop, is a resident of the County of Los Angeles and State of California.  Plaintiffs are further informed and believe, and based thereon allege, that Chan had the right and ability to supervise or control the infringing activity alleged herein and that Chan had a direct financial interest in such activity.  In addition or alternatively, Chan had knowledge or reason to know of the infringing activity and took actions which contributed to such activity.

35.   Defendant Mei Yuk Cheung a/k/a KC Chang ("Cheung") is an individual and doing business as www.ufindings.com, Ufindings and Pet & Gift Shop, is a resident of the County of Los Angeles and State of California.  Plaintiffs are further informed and believe, and based thereon allege, that Cheung had the right and ability to supervise or control the infringing activity alleged herein and that Cheung had a direct financial interest in such activity.  In addition or alternatively, Cheung had knowledge or reason to know of the infringing activity and took actions which contributed to such activity.

36.     Upon information and belief, Does 1 – 10 are either entities or individuals who are residents of or present in this judicial district, and are subject to the jurisdiction of this Court.  Upon information and belief, Does 1 – 10 are principals or supervisory employees of the named defendants, suppliers of the named defendants or other entities or individuals who are manufacturing, distributing, selling and/or offering for sale unauthorized apparel and related merchandise in this judicial district which infringes some or all of Plaintiffs' Properties.  The identities of the various Does are unknown to Plaintiffs at this time.  The Complaint will be amended to include the names of such individuals when identified.  Chan and Does 1 – 10 are collectively referred to herein as "Defendants."

## COUNT I - COPYRIGHT INFRINGEMENT

37.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein

38.     Defendants have manufactured, distributed, sold, or offered for sale, unauthorized or counterfeit apparel and related merchandise bearing Plaintiffs' Copyrighted Designs. Itemized lists of some, but not all, of said copyrighted properties infringed upon appear in Exhibits A and C.

39.     Defendants have never been authorized by Plaintiffs to distribute Plaintiffs' Copyrighted Designs, nor have Plaintiffs ever authorized, licensed, or in any manner allowed Defendants the right to manufacture, distribute, sell, offer for sale, any merchandise including, but not limited to, apparel or related merchandise which bear any of Plaintiffs' Copyrighted Designs.

40.     Defendants have manufactured, distributed, sold, or offered for sale, apparel and related merchandise which incorporate Plaintiffs' Copyrighted Designs, in direct infringement of Plaintiffs' Copyrighted Designs.

41.     Defendants have manufactured, distributed, sold, or offered for sale, counterfeit or unauthorized apparel or other merchandise bearing Plaintiffs' Copyrighted Designs.  Defendants committed their acts with actual as well as

constructive knowledge of Plaintiffs' exclusive rights, and their actions have contributed to the infringing, copying, duplication, sale, or offer for sale, of counterfeit copies of Plaintiffs' Copyrighted Designs.  Each act by Defendants that infringes one of Plaintiffs' Copyrighted Designs is the basis for a separate claim against Defendants under the Copyright Act.

42.     Upon information and belief, Defendants' acts as alleged are willful infringements of and have irreparably harmed Plaintiffs' Copyrighted Designs and exclusive rights and threaten additional infringements and irreparable harm to Plaintiffs' copyrights and exclusive rights.  Further harm and injury to Plaintiffs is imminent, and Plaintiffs are without an adequate remedy at law with respect to such harm and injury.  Unless Defendants' acts are enjoined and the illicit counterfeiters of Plaintiffs' Copyrighted Designs are stopped, it is highly probable that Defendants, or others under Defendants' direction, will manufacture, distribute, sell, or offer for sale, additional apparel or other merchandise which bear Plaintiffs' Copyrighted Designs causing further irreparable injury to Plaintiffs.

43.     Defendants have obtained gains, profit, and advantages as a result of their wrongful acts noted above.

44.     Plaintiffs are entitled, at their option, to statutory damages as provided by 17.U.S.C. § 504 in lieu of actual damages and Defendants' profits.

## COUNT II - TRADEMARK INFRINGEMENT AND TRADEMARK COUNTERFEITING

45.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

46.     Plaintiffs own or are licensees of the exclusive rights to those trademarks indexed on Exhibits B and D.  All of the trademark registrations are in full force and effect and are owned by Plaintiffs or one of their affiliated companies. Many of the trademarks are incontestable pursuant to 15 U.S.C. § 1065.

47.     Plaintiffs, or those under their authority, manufacture and distribute all of their advertising and products in conformity with the provisions of the United States trademark law.

48.     Notwithstanding Plaintiffs' well-known and prior common law and statutory rights in their respective trademarks, Defendants have, with actual and constructive notice of Plaintiffs' federal registration rights and long after Plaintiffs' established their rights, adopted and used the trademarks in conjunction with the manufacture, distribution, sale and/or offer to sell apparel and related merchandise in the State of California and interstate commerce.

49.     Defendants have manufactured, distributed, sold, or offered for sale, apparel and related merchandise bearing Plaintiffs' Trademarks without Plaintiffs' authorization. Defendants' manufacture, distribution, sale, or offer for sale, of apparel and related merchandise bearing Plaintiffs' Trademarks in California and interstate commerce has and will cause a likelihood of confusion, deception, and mistake in that the buying public will believe that the products sold by Defendants are authorized, sponsored, approved, or associated with Plaintiffs.

50.     Said acts of infringement will cause irreparable injury to Plaintiffs if Defendants are not restrained by the Court from further violation of Plaintiffs' rights as Plaintiffs have no adequate remedy at law.

51.     Plaintiffs have suffered damages as a result of Defendants' acts.

52.     Defendants' use in commerce of Plaintiffs' trademarks in conjunction with the manufacture, distribution, sale and/or offer to sell apparel and related merchandise is an infringement of Plaintiffs' registered trademarks in violation of 15 U.S.C. § 1114(1).

53.     Defendants willfully committed the acts alleged herein.

54.     The unlicensed apparel and related merchandise bearing Plaintiffs' Trademarks that Defendants' manufactured, sold, distributed, or offered for sale, constitutes a counterfeit product pursuant to 15 U.S.C. § 1116(d).

## **COUNT III - UNFAIR COMPETITION UNDER THE LANHAM ACT**

55.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

56.    As a direct result of Plaintiffs' longstanding use, sales, advertising, and marketing, Plaintiffs' Trademarks have acquired a secondary and distinctive meaning among the public who have come to identify Plaintiffs' Trademarks listed on Exhibits B and D with Plaintiffs and their respective products.

57.    The unauthorized and counterfeit apparel and related merchandise that Defendants have manufactured, sold and distributed exactly duplicates and appropriated Plaintiffs' Trademarks and deludes and confuses the public into believing that Plaintiffs approved, authorized, or sponsored the apparel and related merchandise manufactured, sold, offered for sale, or distributed by Defendants.

58.    Defendants, by misappropriating and using the likenesses of Plaintiffs' Trademarks in connection with the manufacture, distribution, sale or offer to sell apparel and related merchandise, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their products and/or services. Defendants willfully caused such products to enter into interstate commerce.

59.    These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

60.    Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

61.    Plaintiffs have suffered monetary damages as a result of Defendants' acts.

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants as follows:

1.       Permanent injunctive relief restraining Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them from:

a.       Further infringing Plaintiffs' Properties by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by Plaintiffs including, but not limited to, apparel and related merchandise bearing any simulation, reproduction, counterfeit, or colorable imitation of any of Plaintiffs' Properties;

b.       Using any simulation, reproduction, counterfeit, or colorable imitation of any of Plaintiffs' Properties and licensed trademarks in the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation, or distribution of unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs or to any goods sold, manufactured, sponsored, or approved by or connected with Plaintiffs;

c.       Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act that can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants is in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

d.       Engaging in any other activity constituting unfair competition with any of Plaintiffs, or constituting an infringement of any of Plaintiffs' Trademarks or of Plaintiffs' rights in, or to use or to exploit said trademarks, or constituting any dilution of any of Plaintiffs' names, reputations, or goodwill;

e.      Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a. through d.;

f.      Secreting, destroying, altering, or removing, any books or records that may contain any evidence of the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products that infringe any of Plaintiffs' Properties; and

g.      From aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of Plaintiffs' Properties.

2.      Directing that Defendants deliver for destruction all unauthorized products including apparel, labels, signs, prints, packages, dyes, wrappers, receptacles, and advertisements in their possession or under their control bearing any of Plaintiffs' Properties or any simulation, reproduction, counterfeit, or colorable imitation thereof, and all plates, molds, heat transfers, screens, matrices, and other means of making the same.

3.      Directing that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with paragraphs 1 and 2 above.

4.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiffs authorized or are related in any way to any products manufactured, sold, or otherwise circulated or promoted by Defendants.

5.      Awarding to Plaintiffs from Defendants, as a result of Defendants' sale of Unauthorized Products bearing Plaintiffs' Trademarks, three times Plaintiffs' damages and three times Defendants' profits, after an accounting, or statutory damages, should Plaintiffs opt for such relief, consisting of $200,000.00 for each of Plaintiffs' Trademarks infringed upon by Defendants, and to the extent this Court

1  concludes such infringement was willful, $2,000,000.00 for Plaintiffs' Trademarks

2  infringed upon by Defendants pursuant to 15 U.S.C. § 1114 and § 1117.

3        6.      Awarding to each Plaintiff from Defendants selling unauthorized

4  products three times its damages there from and three times Defendants' profits there

5  from, after an accounting, pursuant to 15 U.S.C. § 1125(a) and § 1117.

6        7.      That Plaintiffs be awarded from each Defendant found to be in violation

7  of Plaintiffs' Copyrighted Designs, Defendants' profits, or at Plaintiffs' election, an

8  award of statutory damages pursuant to 15 U.S.C. § 504, of no less than Seven

9  Hundred Fifty Dollars ($750) nor more than Thirty Thousand Dollars ($30,000) per

10  Plaintiffs' Copyrighted Design infringed upon by each Defendant, at the Court's

11  discretion, or should this Court find that such infringement was willful, that this

12  Court, pursuant to its discretion, award statutory damages of up to One Hundred

13  Fifty Thousand Dollars ($150,000) for each of Plaintiffs' Copyrighted Designs

14  infringed upon by each such Defendant.

15        8.      Awarding to Plaintiffs their reasonable attorneys' fees and investigative

16  fees pursuant to 15 U.S.C. § 1117.

17        9.      Awarding to Plaintiffs their costs in bringing this action.

18        10.     Awarding other such relief to Plaintiffs as this Court deems just.

19  Dated:  October 16, 2013          J. Andrew Coombs, A Professional Corp.

20

21                        By:___/s/ J. Andrew Coombs___

22                           J. Andrew Coombs
                         Annie S. Wang

23                   Attorneys for Plaintiffs DC Comics and
                 Sanrio, Inc.

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

3          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs DC Comics and

4    Sanrio, Inc. hereby demand a trial by jury of all issues so triable.

5

6    Dated:  October 16, 2013                    J. Andrew Coombs, A Professional Corp.

7

8                                               By:   /s/ J. Andrew Coombs
                                                       J. Andrew Coombs
9                                                      Annie S. Wang
                                                Attorneys for Plaintiffs DC Comics and
10                                              Sanrio, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT A

## DC COMICS' COPYRIGHTED DESIGNS

| Copyright Registration | Title of Work (Character) | Type of Work |
|---|---|---|
| Txu 1-080-661 | DC Comics Anti-Piracy Guide<br>Batman<br>Robin<br>Superman<br>Wonderwoman<br>Supergirl<br>Justice League | Style Guide |
| VAu 1-059-478 | DC Comics Anti-Piracy Style Guide | Style Guide |
| TX 5-581-762 | Superman | Monthly Publication |
| TX 3-221-758 | Superman | Style Guide |
| TXu-532-372 | DC Comics style guide. | visual arts |

## EXHIBIT B

## DC COMICS' TRADEMARKS

| Trademark | Trademark Registration No. | Trademark Registration Date |
|---|---|---|
| Bat Emblem | 1,581,725 | 2/6/1990 |
| Bat Emblem | 1,581,593 | 2/6/1990 |
| Bat Emblem | 1,581,659 | 2/6/1990 |
| Bat Emblem | 2,119,266 | 12/9/1997 |
| Bat Emblem (BATMAN BEGINS) | 3,299,017 | 9/25/2007 |
| Bat Emblem (BATMAN BEGINS) | 3,110,604 | 6/27/2006 |
| Bat Emblem (BATMAN BEGINS) | 3,326,043 | 10/30/2007 |
| Bat Emblem (BATMAN BEGINS) | 3,313,612 | 10/16/2007 |
| Bat Rep II | 1,219,120 | 12/7/1982 |
| BATARANG | 3,291,749 | 9/11/2007 |
| BATCAVE | 4,135,575 | 5/1/2012 |
| BATGIRL | 3,070,999 | 3/21/2006 |
| BATLINK | 2,483,295 | 8/28/2001 |
| BATMAN | 856,045 | 9/3/1968 |
| BATMAN | 828,412 | 5/9/1967 |
| BATMAN | 839,561 | 11/28/1967 |
| BATMAN | 858,860 | 10/22/1968 |
| BATMAN | 1,221,720 | 12/28/1982 |
| BATMAN | 1,652,640 | 6/30/1991 |
| BATMAN | 1,622,749 | 11/13/1990 |
| BATMAN | 2,457,655 | 6/5/2001 |
| BATMAN & ROBIN | 2,171,937 | 6/7/1998 |
| BATMAN & ROBIN | 2,404,483 | 11/14/2000 |
| BATMAN & ROBIN | 2,245,040 | 5/11/1999 |
| BATMAN BEYOND | 2,762,067 | 9/3/2003 |

| | | |
|---|---|---|
| BATMAN BEYOND | 2,688,935 | 2/18/2003 |
| BATMAN BEYOND | 2,649,865 | 11/12/2002 |
| BATMAN BEYOND | 2,643,418 | 10/29/2002 |
| BATMAN on Bat Rep | 382,770 | 11/12/1940 |
| BATMAN on Bat Rep II (Side Face) (3D) | 804,709 | 3/1/1966 |
| Batman Rope Rep | 1,262,504 | 12/27/1983 |
| BATMAN THE RIDE | 1,861,233 | 11/1/1994 |
| BATMOBILE | 1,124,961 | 9/11/1979 |
| BATMOBILE (By Assignment) | 1,179,342 | 11/24/1981 |
| BATWING & Bat Emblem (outline) | 2,858,716 | 6/29/2004 |
| CATWOMAN | 3,181,586 | 12/5/2006 |
| CATWOMAN | 1,052,504 | 11/9/1976 |
| CATWOMAN | 1,565,883 | 11/14/1989 |
| CATWOMAN | 1,883,034 | 3/7/1995 |
| CATWOMAN | 1,966,766 | 4/9/1996 |
| DAILY PLANET | 3,018,523 | 11/22/2005 |
| DAILY PLANET | 3,066,593 | 3/7/2006 |
| DAILY PLANET | 3,349,268 | 12/4/2007 |
| DOUBLE W Design | 1,332,090 | 4/23/1985 |
| GOTHAM CENTRAL | 3,391,794 | 3/4/2008 |
| GOTHAM CITY | 3,353,156 | 12/11/2007 |
| GOTHAM GIRLS | 2,868,577 | 8/3/2004 |
| GOTHAM KNIGHTS | 3,391,795 | 3/4/2008 |
| JIMMY OLSEN | 1,190,637 | 2/23/1982 |
| JOKER | 1,052,503 | 11/9/1976 |
| KRYPTO | 1,168,306 | 9/8/1981 |
| KRYPTO THE SUPERDOG | 3,061,112 | 2/21/2006 |
| KRYPTO THE SUPERDOG | 3,018,682 | 11/22/2005 |

| | | |
|---|---|---|
| KRYPTO THE SUPERDOG & S in Shield & Rep (in Flying Cape) | 3,066,745 | 3/7/2006 |
| KRYPTONITE | 1,239,506 | 5/24/1983 |
| KRYPTONITE | 2,656,768 | 12/3/2002 |
| LEX LUTHOR | 1,634,007 | 2/5/1991 |
| LEX LUTHOR | 2,802,600 | 1/6/2004 |
| LOIS & CLARK | 3,355,918 | 12/18/2007 |
| LOIS LANE | 2,781,372 | 11/11/2003 |
| LOIS LANE | 1,184,702 | 1/5/1982 |
| MAN OF STEEL | 2,226,436 | 2/23/1999 |
| MR. FREEZE | 2,157,292 | 5/12/1998 |
| ROBIN | 1,294,617 | 9/11/1984 |
| ROBIN | 1,930,901 | 10/31/1995 |
| Robin Rep II | 1,279,991 | 5/29/1984 |
| S Logo | 1,197,814 | 6/15/1982 |
| S Logo | 1,182,041 | 12/15/1981 |
| S Logo | 1,199,552 | 6/29/1982 |
| S Logo | 1,199,630 | 6/29/1982 |
| S Logo | 1,182,172 | 12/15/1981 |
| S Logo | 1,189,376 | 2/9/1982 |
| S Logo | 1,184,881 | 1/5/1982 |
| S Logo | 1,199,690 | 6/29/1982 |
| S Logo | 1,179,537 | 11/24/1981 |
| S Logo | 2,226,415 | 2/23/1999 |
| S Logo | 2,211,378 | 12/15/1981 |
| S Logo (black) | 1,140,418 | 10/14/1980 |
| S Logo (black) | 1,173,150 | 10/13/1981 |
| SUPERGIRL | 2,023,091 | 12/6/2005 |
| SUPERGIRL | 2,943,882 | 4/26/2005 |

DC Comics, et al. v. Chan, et al. Complaint       - 22 -

| | | |
|---|---|---|
| SUPERGIRL | 1,238,334 | 5/17/1983 |
| SUPERGIRL in Telescopic | 414,623 | 6/19/1945 |
| SUPERMAN | 3,615,518 | 5/5/2009 |
| SUPERMAN | 1,070,290 | 7/26/1977 |
| SUPERMAN | 648,647 | 7/16/1957 |
| SUPERMAN | 1,184,822 | 1/5/1982 |
| SUPERMAN | 1,175,907 | 11/3/1981 |
| SUPERMAN | 1,180,068 | 12/1/1981 |
| SUPERMAN | 1,209,668 | 9/21/1982 |
| SUPERMAN | 1,182,947 | 12/22/1981 |
| SUPERMAN | 1,186,803 | 1/19/1982 |
| SUPERMAN | 1,183,841 | 12/29/1981 |
| SUPERMAN | 1,189,393 | 2/9/1982 |
| SUPERMAN | 1,248,822 | 8/23/1983 |
| SUPERMAN | 1,216,976 | 11/16/1982 |
| SUPERMAN | 1,181,536 | 12/8/1981 |
| SUPERMAN | 1,221,718 | 12/28/1982 |
| SUPERMAN | 2,204,195 | 11/17/1998 |
| SUPERMAN | 2,419,510 | 1/9/2001 |
| SUPERMAN in Telescopic | 1,185,526 | 1/12/1982 |
| SUPERMAN in Telescopic | 1,183,809 | 12/29/1981 |
| SUPERMAN in Telescopic | 1,185,853 | 1/12/1982 |
| SUPERMAN in Telescopic | 1,189,355 | 2/9/1982 |
| SUPERMAN in Telescopic | 1,200,394 | 7/6/1982 |
| SUPERMAN in Telescopic | 1,220,896 | 12/21/1982 |
| SUPERMAN in Telescopic | 1,182,226 | 12/15/1981 |
| SUPERMAN in Telescopic | 1,209,863 | 9/21/1982 |
| SUPERMAN in Telescopic | 1,218,552 | 11/30/1982 |

| | | |
|---|---|---|
| SUPERMAN in Telescopic | 1,181,537 | 12/8/1981 |
| SUPERMAN in Telescopic | 2,226,026 | 2/23/1999 |
| SUPERMAN in Telescopic & Chains Rep II (Midrift) | 391,821 | 11/25/1941 |
| SUPERMAN in Telescopic (By Assignment) | 371,803 | 10/10/1939 |
| SUPERMAN in Telescopic (color) | 1,108,577 | 12/12/1978 |
| Superman Rep III (Running) | 1,180,292 | 12/1/1981 |
| Superman Rep III (Running) | 1,178,048 | 11/17/1981 |
| Superman Rep IV (Hands on Hips) | 1,201,149 | 7/13/1982 |
| Superman Rep IX (Flying Figure) | 1,200,387 | 7/6/1982 |
| Superman Rep V (Running) | 1,209,743 | 9/21/1982 |
| Superman Rep VI (Flying Figure) | 1,201,167 | 7/13/1982 |
| Superman Rep VII (Stepping-Up) | 1,235,769 | 4/26/1983 |
| Superman Rep VIII (Flying Figure) | 1,229,321 | 3/8/1983 |
| Superman Rep X (Standing Clenched Fists | 1,200,233 | 7/6/1982 |
| SUPERMAN RIDE OF STEEL | 2,485,624 | 9/4/2001 |
| THE DARK KNIGHT | 3,680,537 | 9/8/2009 |
| THE DARK KNIGHT | 3,690,538 | 9/8/2009 |
| THE DARK KNIGHT | 3,680,539 | 9/8/2009 |
| THE DARK KNIGHT | 1,458,274 | 9/22/1987 |
| The Joker Rep | 1,256,974 | 11/8/1983 |
| THE MAN OF STEEL | 1,433,864 | 3/24/1987 |
| The Penguin Rep III (Jumping) | 1,236,489 | 5/3/1983 |
| TWO FACE | 2,009,805 | 10/22/1996 |
| WONDER WOMAN | 1,221,717 | 12/28/1982 |
| WONDER WOMAN | 1,388,425 | 4/1/1986 |
| WONDER WOMAN Logo | 820,334 | 12/13/1966 |

| WONDER WOMAN Logo II | 395,739 | 6/9/1942 |
|---|---|---|
| Wonder Woman Rep III | 1,236,490 | 5/3/1983 |

1

## EXHIBIT C

2

## SANRIO CO.'S COPYRIGHTED DESIGNS

3

4

| Copyright Registration | Title of Work (Character) | Type of Work |
|---|---|---|
| TX 3-769-888 | SANRIO 1993 Product and Sales Promotion Catalog | Literary Work |
| VAu 684-322 | Sanrio 2005 Character Guide | Graphic Artwork |
| VA 1-303-874 | Character Merchandising | Collective work of artwork, text and photos |
| VA 1-296-115 | 2004 – 100 Characters | Graphic Artwork |
| VA 811-440 | Bad Badtz Maru | Graphic Artwork |
| VAu 498-617 | Chococat | Art original |
| VA 130-420 | Hello Kitty | Graphic Artwork |
| VA 636-579 | KeroKeroKeroppi | Sticker Book |
| VA 707-212 | KeroKeroKeroppi | Pictorial Cartoon Drawing |
| VA 246-421 | Little Twin Stars | Stickers |
| VA 840-495 | Monkichi | Graphic Artwork |
| VA 130-419 | My Melody | Graphic Artwork |
| VA 130-421 | Patty & Jimmy | Graphic Artwork |
| VA 636-582 | Pekkle | Graphic Artwork |
| VA 840-496 | Picke Bicke | Graphic Artwork |
| VA 636-580 | Pochaco | Sticker Book |
| VA 148-625 | Tuxedo Sam | Stickers |
| VA 840-494 | Winkipinki | Graphic Artwork |
| VA 636-581 | Zashikibuta | Stickers |
| VA 1-352-721 | Keroppi / Little Frog…Big Splash | Visual Material |
| Vau 1-078-385 | Sanrio 2010 Character Guide | Visual Material |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT D**

**SANRIO'S TRADEMARKS**

| Trademark | Mark Drawing Code | Trademark Registration No. | Trademark Registration Date |
|---|---|---|---|
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,842,707 | 5/18/04 |
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,707,592 | 4/15/03 |
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,705,164 | 4/8/03 |
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,714,130 | 5/6/03 |
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,952,043 | 5/17/05 |
| Chococat | Design Plus Words, Letters, and/or Numbers | 2,845,315 | 5/25/04 |
| Hello Kitty | Design Only | 1,200,083 | 7/6/82 |
| Hello Kitty | Design Only | 1,277,721 | 5/15/84 |
| Hello Kitty | Typed Drawing | 1,215,436 | 11/9/82 |
| Hello Kitty | Typed Drawing | 1,279,486 | 5/29/84 |
| Hello Kitty | Typed Drawing | 1,391,550 | 4/29/86 |
| Hello Kitty | Design Only | 1,370,105 | 11/12/85 |
| Keroppi | Standard Character Mark | 3,531,383 | 11/11/08 |
| Keroppi | Standard Character Mark | 3,181,350 | 12/5/06 |
| Keroppi | Standard Character Mark | 3,531,382 | 11/11/08 |
| Keroppi | Standard Character Mark | 3,181,349 | 12/5/06 |
| Keroppi | Standard Character Mark | 3,436,548 | 5/27/08 |
| Keroppi | Standard Character Mark | 3,181,348 | 12/5/06 |

| | | | |
|---|---|---|---|
| Keroppi | Standard Character Mark | 3,181,347 | 12/5/06 |
| Keroppi | Standard Character Mark | 3,449,938 | 6/17/08 |
| Keroppi | Standard Character Mark | 3,531,381 | 11/11/08 |
| Keroppi | Standard Character Mark | 3,531,380 | 11/11/08 |
| Keroppi | Standard Character Mark | 3,181,346 | 12/5/06 |
| Keroppi | Standard Character Mark | 3,423,288 | 5/6/08 |
| Keroppi | Standard Character Mark | 3,181,345 | 12/5/06 |
| Little Twin Stars | Typed Drawing | 1,341,864 | 6/18/85 |
| Little Twin Stars | Typed Drawing | 1,192,946 | 4/6/82 |
| Little Twin Stars | Standard Character Mark | 3,245,999 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,998 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,997 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,994 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,993 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,992 | 5/29/07 |
| Little Twin Stars | Standard Character Mark | 3,245,991 | 5/29/07 |
| Monkichi | Standard Character Mark | 3,699,381 | 10/20/09 |
| My Melody | Typed Drawing | 1,305,637 | 11/20/84 |
| My Melody | Typed Drawing | 1,210,192 | 9/28/82 |
| Pekkle | Typed Drawing | 2,053,346 | 4/15/97 |
| Pochacco | Typed Drawing | 2,236,507 | 4/6/99 |
| Pochacco | Typed Drawing | 1,985,358 | 7/9/96 |

| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,506,705 | 11/13/01 |
|---|---|---|---|
| Sanrio | Typed Drawing | 2,506,577 | 11/13/01 |
| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,721,680 | 6/3/03 |
| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,742,381 | 7/29/03 |
| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,721,679 | 6/3/03 |
| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,693,639 | 3/4/03 |
| Sanrio | Design Plus Words, Letters, and/or Numbers | 2,696,063 | 3/11/03 |
| KEROKEROKEROPPI | Standard Character Mark | 3,531,378 | 11/11/2008 |
| KEROKEROKEROPPI | Standard Character Mark | 3,531,376 | 11/11/2008 |
| Bow | Design only | 3,260,857 | 7/10/2007 |
| Bow | Design only | 3,359,800 | 12/25/2007 |
| Bow | Design only | 3,359,801 | 12/25/2007 |
| Bow | Design only | 3,272,377 | 7/31/2007 |
| Bow | Design only | 3,260,860 | 7/10/2007 |
| Bow | Design only | 3,362,512 | 1/1/2008 |
| Bow | Design only | 3,348,608 | 12/4/2007 |
| Bow | Design only | 3,249,704 | 6/5/2007 |
| Bow | Design only | 3,362,514 | 1/1/2008 |
| Bow | Design only | 3,359,799 | 12/25/2007 |
| Bow | Design only | 3,260,858 | 7/10/2007 |

| Bow | Design only | 3,445,304 | 6/10/2008 |
|---|---|---|---|
| Bow | Design only | 3,260,859 | 7/10/2007 |
| Bow | Design only | 3,359,802 | 12/25/2007 |
| Bow | Design only | 3,260,861 | 7/10/2007 |
| Bow | Design only | 3,253,794 | 6/19/2007 |
| Bow | Design only | 3,260,862 | 7/10/2007 |
| Outline of Hello Kitty | Design only | 3,666,736 | 8/11/2009 |
| Outline of Hello Kitty | Design only | 3,756,724 | 3/9/2010 |
| Outline of Hello Kitty | Design only | 3,751,315 | 2/23/2010 |
| Outline of Hello Kitty | Design only | 3,868,138 | 10/26/2010 |
| Outline of Hello Kitty | Design only | 3,756,725 | 3/9/2010 |
| Outline of Hello Kitty | Design only | 3,666,736 | 8/11/2009 |
| Outline of Hello Kitty | Design only | 3,679,187 | 9/8/2009 |
| Outline of Hello Kitty | Design only | 3,865,208 | 10/19/2010 |
| Dear Daniel | Standard Character Mark | 3,072,626 | 3/28/2006 |
| Dear Daniel | Standard Character Mark | 3,067,244 | 3/14/2006 |